Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiff Movant Tuk Doss and*
*Proposed Co-Lead Counsel for the Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIELLE CARR, Individually and On Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ZOSANO PHARMA CORPORATION, STEVEN LO, JOHN P. WALKER, and KONSTANTINOS ALATARIS, <br><br> Defendants. | Case No. 3:20-CV-07625-EMC <br><br> **TUK DOSS'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL** <br><br> Date:  February 4, 2021 <br> Time:  1:30 p.m. <br> Crtrm.:  5 - 17th Floor <br><br> Judge:  Edward M. Chen |
| ROB BECERRA, Individually and On Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ZOSANO PHARMA CORPORATION, STEVEN LO, JOHN P. WALKER, and KONSTANTINOS ALATARIS, <br><br> Defendants. | Case No. 3:20-cv-07850-CRB |

TUK DOSS'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS
Case No. 3:20-CV-07625-EMC

Lead Plaintiff Movant Tuk Doss ("Doss") respectfully submits this memorandum of law in opposition to the six motions for appointment as lead plaintiff filed by competing lead plaintiff movants (Dkt. Nos. 9, 13, 15, 22, 26, 33).

## I.   INTRODUCTION

Seven investors filed competing motions for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): Doss (Dkt. No. 29); Hosam Alqurashi ("Alqurashi") (Dkt. No. 33); William Kamer ("Kamer") (Dkt. No. 22); and four others.[1]

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Courts in this Circuit generally consider four factors to determine financial interest: gross shares purchased, net shares purchased during the class period, net expenditures during the class period, and financial loss. As demonstrated in Doss's memorandum of points and authorities in support of his lead plaintiff motion (Dkt. No. 29) and loss chart (Dkt. No. 32-3), Doss purchased 738,031 gross shares and 485,861 net shares during the class period for a net expenditure of approximately $439,172. These figures are larger than the figures of any other movant.  Doss also suffered a last-in-first-out ("LIFO") loss of approximately $135,539, the third largest of any other movant. While Alqurashi and Kamer claim to have a larger loss than Doss, they purchased fewer shares (both gross and net) and have smaller net expenditures. In such situations, courts generally hold that the movant that prevails under the first three factors has the largest financial interest.

---

[1] *See* Dkt. Nos. 9, 13, 15, 26.

Since Doss has the largest financial interest in the relief sought by the class, he is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Because no other movant can rebut this presumption, Doss should be appointed as lead plaintiff, and his selection of counsel should be approved.[2]

## II.    ARGUMENT

### A.    The PSLRA Mandated Procedure for Appointing a Lead Plaintiff

The PSLRA mandates that the Court appoint "the most adequate plaintiff" to be lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the "most adequate plaintiff" is the movant that: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.").

Once the Court identifies the presumptively most adequate plaintiff, the presumption may be rebutted only "upon proof . . . that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, as explained below, Doss is the presumptively most adequate plaintiff because he filed a lead plaintiff motion in response to a notice, has a larger financial interest than the competing lead plaintiff movants, and satisfies the requirements of Rule 23. Since no other movant can rebut this presumption, Doss should be appointed as lead plaintiff.

---

[2] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

**B.    Doss Is the Presumptively Most Adequate Plaintiff Because He Has the Largest Financial Interest in the Relief Sought by the Class**

Doss satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, he filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 29. Second, he satisfies the requirements of Rule 23, as demonstrated in his memorandum of law in support of his lead plaintiff motion. *See* Dkt. No. 29 at 7-9. Finally, as explained *infra*, Doss has the largest financial interest in the relief sought by the class.

Since the PSLRA does not mandate any particular methodology for determining which movant has the largest financial interest in the relief sought by the class, district courts are free to choose any methodology that is "both rational and consistently applied." *See Cavanaugh*, 306 F.3d at 730 n.4.

Courts in this Circuit generally rely on the four-factor *Olsten-Lax* test to determine financial interest, which considers: (1) gross shares purchased; (2) net shares purchased; (3) net funds expended; and (4) approximate losses suffered. *See Melucci v. Corcept Therapeutics Inc.*, No. 19-cv-01372, 2019 WL 4933611, at *3 (N.D. Cal. Oct. 7, 2019). While some courts view financial losses as the most important factor, others consider the second factor, net shares purchased, to be the most important. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of financial interest in the recovery sought, but considers that it should be supplemented with in/out losses, *i.e.,* losses suffered by selling shares during the class period."); *see also Pio v. Gen. Motors Co.*, No. 14-cv-11191, 2014 WL 5421230, at *4, *5 (E.D. Mich. Oct. 24, 2014) (since "the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses," "the first three factors provide the most objective measurement of a movant's stake in the litigation"). In fact, where there is a single corrective disclosure at the end of the class period, as is the case here, net shares purchased is the most accurate measure of financial interest because it can be assumed that there was a consistent "fraud

premium" throughout the class period and therefore that every share was damaged equally. *See Network Associates*, 76 F. Supp. 2d at 1027.

Doss has a larger financial interest than the competing movants because Doss purchased the most shares, gross and net, and has the largest net expenditure:[3]

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Loss (LIFO) |
|--------|------------------------|----------------------|-----------------|-------------|
| Tuk Doss | **738,031** | **485,861** | **$439,172.60** | $135,539.74 |
| Hosam Alqurashi | 6,825 | 6,825 | $398,580.00 | **$394,766.16** |
| William Kamer | 192,000 | 175,000 | $288,451.11 | $165,971.11 |

The amount of loss is the only axis along which Alqurashi and Kamer can claim a larger financial interest than Doss. However, the final factor "does not overcome the combined weight of the first three factors." *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 17-cv-1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (appointing a movant with a loss of $40,905 over a movant with a loss of $76,311); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06-cv-5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (appointing the movant that prevailed on the first three factors, but not loss). Moreover, since this is a case with a constant fraud premium, net shares purchased is a more accurate measure of financial interest than loss, and Doss prevails on net shares purchased by a wide margin.[4]

Accordingly, Doss has the largest financial interest in the relief sought by the class and is therefore the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[3] The values in the chart are derived from the movants' loss charts submitted with their lead plaintiff motions. While Alqurashi submitted apparently false information regarding his purchase (*see* Section II.D., *infra*) the figures in this chart represent Doss's best guess regarding Alqurashi's actual figures.

[4] One court has recently held that a movant with the largest loss had a larger financial interest than a movant that prevailed on the first three factors. *See In Re Wrap Techs., Inc. Sec. Exch. Act Litig.*, No. 20-cv-8760, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021). However, in *Wrap*, the consolidated action alleged partial corrective disclosures, so there was no constant fraud premium, which mitigated the importance of the net shares purchased factor. Moreover, the *Wrap* court incorrectly found that "in every case . . . the court used the first three factors to support appointment of a lead plaintiff with the largest loss, not to appoint a lead plaintiff that did not have the largest loss, yet had the largest number of shares and expenditures." *Id.* In fact, *TransDigm* and *SafeNet* are both actions in which the court held that the first three factors combined outweighed the last.

**C.　The Presumption that Doss Is the Most Adequate Plaintiff Has Not Been Rebutted**

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that Doss would be inadequate or subject to unique defenses. Doss is currently retired but formerly worked for a prominent defense contractor for approximately 11 years. Doss has also been managing his own investment portfolio for 9 years. As such, Doss is a sophisticated individual, more than capable of adequately representing the class. Accordingly, Doss should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732.

**D.　Alqurashi Is Inadequate and Subject to Unique Defenses**

While Alqurashi is not entitled to consideration for appointment as lead plaintiff, it is prudent to identify two serious issues with Alqurashi's lead plaintiff motion which additionally disqualify him from appointment as lead plaintiff.

First, despite listing only one transaction, Alqurashi's certification and loss chart appear to be false. Alqurashi claims he purchased 136,500 shares on February 16, 2017, for $58.40 per share. *See* Dkt. Nos. 33-3, 33-5. However, the trading maximum on that day was only $3.539. Doss assumes that Alqurashi is mistakenly using a post-reverse stock split price and that his true purchase price is one twentieth of the figure listed ($2.92 per share). However, if Alqurashi is using a post-stock split price, his "shares purchased" is false. It should be one twentieth of 136,500, which is 6,825. As such, either Alqurashi's certification is false or he failed to provide context which might speak to his adequacy to represent the class. Alqurashi's lead plaintiff motion should be rejected on this basis alone. *See Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14-cv-10020, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting a movant with discrepancies in its financial data); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("The Court thus finds that the errors in the Aroras' submissions further militate against appointment and render them inadequate to serve as lead

plaintiff.") (internal quotation marks and brackets omitted); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) ("[E]rrors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class.").

Second, Alqurashi is subject to a unique defense because his only purchase occurred mere days after the start of the class period. The class period in this action is very long—more than three years and seven months—and it starts on February 13, 2017. *See* Dkt. No. 1 (the "Complaint") ¶ 1. Alqurashi's only purchase was made three days later on February 16, 2017. *See* Dkt. No. 33-3. It is not unusual in these class actions for the class period to change as the parties litigate the claims, especially if the court dismisses certain claims. If Defendants are ever able to shorten the class period, even slightly, by successfully arguing that they made no false or misleading statement on February 13, 2017, Alqurashi's claim will be eliminated. This is an especially real risk here given the facts of the case. On February 13, 2017, Zosano announced the results of a clinical study of Qtrypta for the treatment of migraines. *See* Complaint ¶ 22. However, Zosano did not announce that it had filed a New Drug Application ("NDA") for Qtrypta until December 23, 2019. *See id.* ¶ 32. The corrective disclosure alleged in the Complaint is that the FDA signaled that Zosano's NDA for Qtrypta would be rejected due to deficiencies with the NDA. *See id.* ¶ 36. As such, it is entirely possible that purchases made before the filing if the NDA will be excluded, including Alqurashi's. The mere potential that Defendants will attack Alqurashi in this way is sufficient to disqualify Alqurashi from appointment as lead plaintiff because he will inevitably be forced to invest substantial resources into litigating this one issue, rather than focusing on issues common to the class as a whole. *See In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (disqualifying a lead plaintiff movant who was merely "vulnerabl[e]" to a unique defense that may or may not be successful, reasoning that the potential for the unique defense was "sufficient to dispute his adequacy and typicality" because it might "distract[] from the central issue[s]") (citing *Applestein v. Medivation Inc.*, No. 10-cv-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010)); *In re Netflix, Inc., Sec. Litig.*, No. 12-cv-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (the purpose of disqualifying movants subject

to unique defenses is "to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-00870, 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) (similar).

As such, Alqurashi should not be appointed as lead plaintiff even if this court were to consider his motion. Regardless, Doss should be appointed as lead plaintiff because he is the presumptively most adequate plaintiff, and the presumption has not been rebutted.

### E.    Doss's Choice of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). *See also Cavanaugh*, 306 F.3d at 732 n.11 ("Congress gave the lead plaintiff . . . the power to select a lawyer for the class."). As such, a Court should only interfere with the lead plaintiff's choice of counsel if the choice "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* at 733.

Here, Doss has selected Glancy Prongay & Murray LLP and Kehoe Law Firm, P.C. as co-lead counsel for the class. The firms have the expertise, resources, and experience needed to effectively conduct this litigation. *See* Dkt. Nos. 32-4, 32-5 (firm résumés). By approving Doss's selection of counsel, the Court may be assured that the class will receive the highest caliber of legal representation. Accordingly, Doss's selection of lead counsel for the class should be approved.

## III.    CONCLUSION

For the foregoing reasons, Doss respectfully requests that the Court enter an Order: (i) consolidating the related actions; (ii) appointing Tuk Doss as Lead Plaintiff; (iii) approving Doss's selection of Glancy Prongay & Murray LLP and Kehoe Law Firm, P.C. as Co-Lead Counsel; and (iv) denying the competing motions.

DATED: January 11, 2021                Respectfully submitted,

                                       GLANCY PRONGAY & MURRAY LLP

                                       By:    /s/ Charles H. Linehan
                                       Robert V. Prongay
                                       Charles H. Linehan
                                       Pavithra Rajesh
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, California 90067
                                       Telephone: (310) 201-9150
                                       Facsimile: (310) 201-9160
                                       Email:  clinehan@glancylaw.com

                                       KEHOE LAW FIRM, P.C.
                                       Michael K. Yarnoff
                                       Two Penn Center Plaza
                                       1500 JFK Boulevard, Suite 1020
                                       Philadelphia, PA 19102

                                       *Attorneys for Lead Plaintiff Movant Tuk Doss and Proposed Co-Lead Counsel for the Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On January 11, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2021, at Los Angeles, California.

*/s/ Charles H. Linehan*
Charles H. Linehan

TUK DOSS'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS
Case No. 3:20-CV-07625-EMC